IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JACOB CHACKO** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 22-2336** |
| | : | |
| **SIGMAPHARM LABORATORIES, LLC** | : | |
| | : | |

# MEMORANDUM

**MURPHY, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**March 2, 2023**

## I.　Introduction

Employees must certify their medical condition to take leave under the Family and Medical Leave Act. Both an employer and employee carry responsibility for ensuring the certification process follows guidance from the Department of Labor. The same rules apply when recertifying an employee's medical condition.

An employer must provide proper notice to its employee if their certification is insufficient. The employee has to cure whatever the employer deems insufficient. And the employer must allot enough time for them to do so. The employer may deny the employee's request for medical leave if the employee fails to fix the deficiencies.

In this case, an employee claims that his former employer interfered with his right to leave, but fails to allege facts sufficient to plausibly demonstrate the interference. Specifically, the employee's complaint is void of facts showing that his former employer interfered with his rights by requesting that he recertify his medical condition. The employee also fails to show the harm he suffered is causally connected to his employer's alleged interference.

Absent such plausible allegations, we must grant his former employer's motion to dismiss. But we will grant the employee leave to amend his complaint.

## II. <u>Factual Allegations</u>

Mr. Jacob Chacko took a medical leave of absence from his employer, Sigmapharm Laboratories, LLC ("Sigmapharm"), in August 2021. DI 1 ¶ 14. He suffered from a serious digestive condition. *Id.* Sigmapharm approved Mr. Chacko's request under the Family and Medical Leave Act (FMLA). *Id.* ¶ 15. Mr. Chacko took his requested leave from August 11-13, 16-27, and 30-31, 2021. *Id.* He used the time off to undergo tests and look for a specialist who could treat his condition. *Id.*

Mr. Chacko requested Sigmapharm grant him time off beyond September 1, 2021 to find treatment for his digestive problems. *Id.* ¶ 16. He sought more leave to travel to India to seek treatment for his condition. *Id.* In an August 31 letter, Sigmapharm explained to Mr. Chacko that he must provide a recertification of his medical condition for extra leave. *Id.* ¶ 17.

Three days later, Sigmapharm denied Mr. Chacko's request. *Id.* ¶ 18. Sigmapharm cited Mr. Chacko's failure to submit a sufficient recertification of his medical condition as its reason for denying leave. *Id.* Sigmapharm apprised Mr. Chacko of his available paid time off, which would give him added time away from work until September 10. *Id.* ¶ 19.

On September 10 — the last day of Mr. Chacko's paid time off — Sigmapharm suspended him without pay. *Id.* ¶ 20, 21. The company planned to investigate his conduct during medical leave, particularly, his presence on company property. *Id.* While suspended, Mr. Chacko procured a medical note stating he could return to work on September 17. *Id.* ¶ 22. Mr. Chacko cooperated with the investigation, *id.* ¶ 21, but it resulted in his termination on September 17, *id.* ¶ 23.

## III. <u>Sigmapharm's Motion to Dismiss</u>

Mr. Chacko sued Sigmapharm for allegedly violating the FMLA and Americans with

Disabilities Act.  Relevant here, Mr. Chacko alleges two separate violations of the FMLA.

First, Mr. Chacko claims that Sigmapharm retaliated against him for using medical leave. *Id.* ¶ 45, 46.  Mr. Chacko maintains that Sigmapharm terminated him because he "request[ed] reasonable accommodations" for his health condition — not because of his presence on company property during his medical leave.  *Id.* ¶ 24.  Second, Mr. Chacko claims that Sigmapharm interfered with his desire to take medical leave under the FMLA.  *See id.* ¶ 46.  He alleges Sigmapharm violated the FMLA by "(1) terminating [him] for requesting and/or exercising his FMLA rights and/or for taking FMLA-qualifying leave; (2) failing to attempt to clear up any potential documentation concerns regarding [his] FMLA documentation, including reaching out to [his] doctor for clarification or allowing [him] to provide additional documentation demonstrating his need for continued FMLA leave; (3) considering [his] FMLA leave needs in making the decision to terminate him; (4) terminating [him] to intimidate him and/or prevent him from taking FMLA leave in the future; and (5) making negative comments and/or taking actions towards him that would dissuade a reasonable person from exercising his rights under the FMLA."  *Id.*

Sigmapharm moved to dismiss only Mr. Chacko's FMLA interference claim.  *See* DI 10. Sigmapharm argues that Mr. Chacko did not plead a valid interference claim because he did not show he was entitled to leave post-dating September 1, or that Sigmapharm otherwise failed to comply with the FMLA.  According to Sigmapharm, Mr. Chacko's claim fails because he cannot allege any denial of FMLA benefits relating to the recertification process.  Sigmapharm adds that Mr. Chacko suffered no prejudice — and thus no FMLA violation — from denial of his FMLA leave because he was terminated for a different reason: showing up "at work during off-hours." *Id.* at 6.

Mr. Chacko replies that Sigmapharm "chilled" his ability to request additional FMLA leave after suspending him without pay on September 10, 2021.  DI 11 at 9.  The suspension, argues Mr. Chacko, "was at least in part to 'prevent him from taking FMLA leave in the future.'"  *Id.* (quoting DI 1 ¶ 46).  And Mr. Chacko insists he suffered prejudice from Sigmapharm's conduct.  He says "(1) he was suspended (unpaid) and then terminated . . . almost immediately after his FMLA renewal request, . . . [and] (2) his FMLA request was denied by [Sigmapharm], and therefore he was not permitted to take the extended leave he requested."  *Id.*  Alternatively, Mr. Chacko requests that we grant him leave to amend his complaint if we decide he did not state a claim for FMLA interference.  *Id.* at 10.

For the reasons set forth below, we will grant Sigmapharm's motion to dismiss without prejudice and grant Mr. Chacko's leave to amend his complaint.

**IV.** **Standard of Review**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).  Deciding whether a complaint is facially plausible is "context specific, requiring the reviewing court to draw on its experience and common sense."  *Iqbal*, 556 U.S. at 663-64.

"Assessing plausibility under *Twombly* and *Iqbal* is a three-step process."  *McDermid v. Inovio Pharms., Inc.*, 520 F. Supp. 3d 652, 661 (E.D. Pa. 2021).  "The first step in that process requires an articulation of the elements of the claim."  *Lutz v. Portfolio Recovery Assocs., LLC*,

4

49 F.4th 323, 327 (3d Cir. 2022). The second step is "identify[ing] those allegations that, being merely conclusory, are not entitled to the presumption of truth." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). Courts do not grant the presumption of truth to allegations that are "so threadbare or speculative that they fail to cross the line between the conclusory and the factual." *Id.* at 790 (quoting *Peñalbert-Rosa v. Fortuño-Burset*, 631 F.3d 592, 595 (1st Cir. 2011)). The third step asks courts to assume the veracity of any well-pleaded factual allegations to "determine whether they plausibly give rise to an entitlement to relief." *McDermid*, 520 F. Supp. 3d at 661 (quoting *Connelly*, 809 F.3d at 787).

**V.      Analysis**

We start by examining what Mr. Chacko must allege to state a claim of interference under the FMLA.

Congress enacted the FMLA "to allow employees to 'balance the demands of the workplace with the needs of families' and 'to entitle employees to take reasonable leave for medical reasons.'" *Keller v. Lackawanna County*, 2017 WL 3268154, at *3 (M.D. Pa. Aug. 1, 2017). "The Medical Leave Act carries out these objectives by providing that eligible employees are entitled to 12 workweeks of leave during any 12-month period if the employee has a 'serious health condition' that makes the employee unable to perform the functions of her position." *Hansler v. Lehigh Valley Hosp. Network*, 798 F.3d 149, 152-53 (3d Cir. 2015) (quoting 29 U.S.C. § 2612(a)(1)(D)).

Employees seeking redress for an FMLA violation can bring either retaliation or interference claims.[1] The Department of Labor "defines interference to include not only outright

---

[1] "When employees invoke rights granted under the FMLA, employers may not 'interfere with, restrain, or deny the exercise of or attempt to exercise' these rights. Nor may employers

denials of leave, but 'discouraging an employee from using such leave.'" *Thomas v. Brandywine Hosp., LLC*, 2022 WL 507478, at *4 (E.D. Pa. Feb. 18, 2022) (quoting 29 C.F.R. § 825.220(b)). "An employee may have a claim for interference if he or she requested FMLA leave and were subsequently terminated." *Fagan v. Elwyn, Inc.*, 2017 WL 3456528, at *2 (E.D. Pa. Aug. 11, 2017). But "the FMLA does not provide employees with a right against termination for a reason other than interference with rights under the FMLA." *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 403 (3d Cir. 2007).

To state a claim of interference, an employee must establish that "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA." *Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014) (quoting *Johnson v. Cmty. Coll. of Allegheny Cnty.*, 556 F. Supp. 2d 405, 446 (W.D. Pa. 2008)). The Third Circuit has said "that the first four elements of this longer test largely collapse into the first element of the *Callison* formulation because in order to be entitled to benefits, an employee must be eligible for the FMLA protections and leave, work for a covered employer, and provide sufficient notice." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 252 n.2 (3d Cir. 2014); *see Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005). So, put differently, an employee must show "he was entitled to benefits under the FMLA and that his

---

'discharge or in any other manner discriminate against any individual for opposing any practice made unlawful.' The former provision is generally, if imperfectly, referred to as 'interference' whereas the latter is often referred to as 'retaliation.'" *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301 (3d Cir. 2012) (first quoting 29 U.S.C. § 2615(a)(1); then quoting § 2615(a)(2); and then quoting *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005)).

employer illegitimately prevented him from obtaining those benefits." *Sarnowski*, 510 F.3d at 401.

Mr. Chacko has adequately pled he was entitled to FMLA benefits. He claims, and Sigmapharm does not contest, that he was an eligible employee. DI 1 ¶¶ 39, 40, 41. Sigmapharm was subject to the FMLA's requirements. *Id.* ¶ 42. Sigmapharm does not contest that Mr. Chacko gave sufficient notice of his requested leave. Thus, Mr. Chacko properly alleged his entitlement to benefits. We must decide whether Mr. Chacko has plausibly alleged that Sigmapharm illegitimately denied him benefits by failing to clarify his medical recertification or terminating him for exercising his rights. He did not.

### A. Mr. Chacko fails to allege that Sigmapharm illegitimately denied him benefits because Sigmapharm can require its employees to recertify their medical condition.

The Department of Labor allows employers to require employees to "obtain subsequent recertifications [of their medical condition] on a reasonable basis." *Watson v. Drexel Univ.*, 2021 WL 4429826, at *2 (3d Cir. Sept. 27, 2021) (quoting *Hansler*, 798 F.3d at 153). The recertification process resembles the initial certification process. *Campbell v. Jefferson Univ. Physicians*, 22 F. Supp. 3d 478, 485 (E.D. Pa. 2014). An employer may request recertification if it finds that certification is insufficient. "A certification is considered insufficient if the employer receives the complete certification, but the information provided is vague, ambiguous, or non-responsive." 29 C.F.R. § 825.305(c). "A 'sufficient' medical certification must state (1) the date on which the serious health condition began, (2) the probable duration of the condition, (3) relevant medical facts, (4) a statement that the employee is unable to perform the functions of her position, (5) the dates and duration of any planned medical treatment, and (6) the expected duration of the intermittent leave." *Hansler*, 798 F.3d at 153.

Employers are required to "advise an employee whenever [they] find[] a certification incomplete or insufficient, and shall state in writing what additional information is necessary to make the certification complete and sufficient." 29 C.F.R. § 825.305(c). An employer violates an employee's FMLA rights if it does not request additional information from its employee after receiving an insufficient certification. *See Herco v. Se. Pa. Transp. Auth.*, 2011 WL 294493, at *3 (E.D. Pa. Jan. 25, 2011). The employer must "allow an opportunity" for the employee "to cure any such deficiencies." *Payne v. Woods Servs., Inc.*, 520 F. Supp. 3d 670, 675 (E.D. Pa. 2021) (holding plaintiff plausibly pled interference by alleging his employer failed to grant him an opportunity to cure deficiencies in his request for leave). The deadline for an employee to cure an improper certification is seven days. *Watson*, 2021 WL 4429826, at *4.

Mr. Chacko's complaint lacks plausible allegations that Sigmapharm interfered with his rights by requesting that he recertify his medical condition. First, Mr. Chacko does not say what he submitted to recertify his medical condition after being notified that he needed to do so. We are left to wonder whether Mr. Chacko submitted *something* between the date he found out he must recertify (August 31) and the date Sigmapharm declared his recertification insufficient (September 3). Second, Mr. Chacko does not explain what part — if any — of his recertification Sigmapharm deemed insufficient. He provides no allegations regarding what Sigmapharm may have considered vague, ambiguous, or non-responsive.

Third, and as Sigmapharm points out, Mr. Chacko does not say whether he tried to cure his recertification. *See* DI 10 at 4. Mr. Chacko claims that he procured a medical note so he could return to work on September 17. *See* DI 1 ¶ 22. But it is unclear whether Mr. Chacko retrieved the note for the purpose of curing deficiencies. Fourth, and unlike the employee in *Payne*, Mr. Chacko does not allege that Sigmapharm interfered with his efforts to cure his

insufficient certification. While he alleges that Sigmapharm denied his additional request on September 3, *see id.* ¶ 18, he does not say whether Sigmapharm did *not* give him the required time to remedy whatever deficiencies existed.

Further, Mr. Chacko tries to shift responsibility for recertifying his medical condition by claiming that Sigmapharm should have inquired with his doctor to "clear up any potential documentation concerns." *Id.* ¶ 46. This allegation cannot establish interference under the law. The Department of Labor does not *require* employers to contact an employee's health provider to authenticate or clarify his medical certification.

> If an employee submits a complete and sufficient certification signed by a health care provider, the employer may not request additional information from the health care provider. However, the employer ***may*** contact the health care provider for purposes of clarification and authentication of the medical certification (whether initial certification or recertification) after the employer has given the employee the opportunity to cure any deficiencies as set forth in § 825.305(c).

29 C.F.R. § 825.307(a).

The District of Connecticut faced an argument like Mr. Chacko's allegation in *Newman v. HARC, Inc.*, 2022 WL 4291387 (D. Conn. Sept. 16, 2022). In *Newman*, the court rejected an assistant's argument that her former employer "should have called the doctor's office pursuant to the procedures outlined in 29 C.F.R. § 825.307 and followed up directly with further inquiries" if she submitted an insufficient medical certification. *Id.* at *4. After receiving an insufficient certification, the former employer requested that the assistant "provide more information" if "she wanted her request for FMLA leave to be approved." *Id.* at *2. The assistant did not, resigned, and later claimed the employer shouldered responsibility for getting the information to cure deficiencies in her certification. *Id.* The court disagreed, concluding "it was [the assistant's] responsibility to do so, and nothing in the statute or the regulations shifts that responsibility to [the employer]." *Id.* at *5.

9

In Mr. Chacko's view, Sigmapharm should have sought "clarification or allow[ed] [him] to provide additional documentation demonstrating his need for continued FMLA leave." DI 1 ¶ 27. We agree with the *Newman* court's application of Department of Labor guidance and conclude Sigmapharm had no obligation to contact Mr. Chacko's doctor. Sigmapharm correctly explicates in its motion to dismiss that (1) nothing required it to contact Mr. Chacko's employer, and (2) Mr. Chacko does not allege whether clarification or authentication would have cured the deficiencies in his recertification. Therefore, Mr. Chacko's argument is inapposite.

### B. Mr. Chacko's interference claim also fails for the independent reason that he does not allege prejudice resulting from an FMLA violation.

To successfully allege an FMLA interference claim, an aggrieved employee must also demonstrate that the interference prejudiced him. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (An "employer is liable only for compensation and benefits lost 'by reason of the violation,' for other monetary losses sustained 'as a direct result of the violation,' and for 'appropriate' equitable relief, including employment, reinstatement, and promotion." (quotations omitted)). To show prejudice, an employee must show that an employer's failure to comply with the FMLA "rendered him unable to exercise that right in a meaningful way, thereby causing injury." *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 143 (3d Cir. 2004). But an employer "may defeat [an employee's] claim by showing that the [employee] was terminated for reasons 'unrelated to his exercise of rights.'" *Gunter v. Cambridge-Lee Indus., LLC*, 186 F. Supp. 3d 440, 449 (E.D. Pa. 2016) (citing *Lichtenstein*, 691 F.3d at 312).

Mr. Chacko's allegations of prejudice fail for two reasons. First, his complaint acknowledges that Sigmapharm did not fire him for requesting additional leave. Rather, according to Mr. Chacko, Sigmapharm terminated him "because he was present at the work site during non-work hours which allegedly conflicted with his medical paperwork." DI 1 ¶ 23. By

10

his own account, the "remedy is [not] tailored to the harm suffered." *Ragsdale*, 535 U.S. at 89.

Second, Sigmapharm was well within its rights to deny Mr. Chacko's request in the first place. Mr. Chacko argues that Sigmapharm's denial of his request for "extended leave" caused him to suffer prejudice. DI 11 at 9. As explained above, employers can request that employees recertify his medical condition. Mr. Chacko's argument that Sigmapharm's actions stopped him from taking future leave neglects the fact that Sigmapharm could deny his additional request due to an insufficient recertification.[2]

### C.     We grant Mr. Chacko leave to amend his complaint.

The Federal Rules of Civil Procedure permit courts to "freely" grant leave for parties to amend their pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Third Circuit has stated a district court may deny a request for leave to amend if "(1) the moving party has

---

[2] Mr. Chacko's argument also blends his retaliation and inference claims. In his reply, Mr. Chacko references the "overlap between FMLA retaliation analysis" and FMLA interference analysis. DI 11 at 8; *see also DeCicco v. Mid-Atlantic Healthcare, LLC*, 275 F. Supp. 3d 546, 563 (E.D. Pa. 2017) ("[T]he precise circumstances under which a plaintiff may advance both retaliation and interference claims is not entirely clear."). He argues that "*requesting* FMLA leave can form the legal basis for an interference claim *as well as* a retaliation claim." DI 11 at 8 (citing *Lichtenstein*, 691 F.3d at 301-02); *see also Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009) ("[F]iring an employee for a valid request for FMLA leave may constitute inference with the employee's FMLA rights as well as retaliation against the employee."); *see also Beird v. Lincoln Univ. of Commonwealth Sys. of Higher Educ.*, 487 F. Supp. 3d 270, 280 (E.D. Pa. 2020) ("[W]e question whether terminating an employee who is currently using or about to use FMLA leave can be actionable in all circumstances. If that were the case, an FMLA-bound employee could never be terminated, even for a perfectly legitimate reason."). And Mr. Chacko claims that his request — and subsequent termination — were geared towards "prevent[ing] him from taking FMLA leave in the future." DI 1 ¶ 46. Mr. Chacko's argument misses the mark. "Nothing in the complaint supports an inference that [Mr. Chacko] [would have been] entitled to FMLA leave in the future." *Mercer v. Dietz & Watson, Inc.*, 2015 WL 7294901, at *4 (E.D. Pa. Nov. 19, 2015) (granting employer's motion to dismiss interference claim because an employee "conflate[d] an interference claim with a retaliation claim" by alleging "his termination interfered with and precluded him from taking future medical leave"). The complaint does not include any allegations suggesting Mr. Chacko would have been granted additional leave after fixing his insufficient recertification.

demonstrated undue delay, bad faith, or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000). "[I]f a complaint is vulnerable to a 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008); *see also Santiago v. St. Mary Med. Ctr.*, 2015 WL 6758163, at *5 n.5 (E.D. Pa. Nov. 5, 2015) (dismissing FMLA interference claim with prejudice after plaintiff failed for a third time to "plead all facts relating to communications to and from" a former employer regarding FMLA leave).

We grant Mr. Chacko leave to amend his complaint and properly allege that Sigmapharm violated his rights under the FMLA.

**VI.     Conclusion**

We hold that Mr. Chacko has failed to state a FMLA interference claim upon which relief could be granted. We grant Sigmapharm's motion to dismiss (DI 10) without prejudice, and grant Mr. Chacko leave to amend his complaint within fourteen days.